UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

LOIS L. DICZEK,  Civil No. 05-1629 (JMR/FLN)

    Plaintiff,

v.  **REPORT AND RECOMMENDATION**

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.

_____

Edward C. Olson for Plaintiff
Lonnie F. Bryan for Defendant
_____

Plaintiff Lois L. Diczek seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") who denied her application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). This Court has appellate jurisdiction over the claim pursuant to 42 U.S.C. § 405 (g). The matter was referred to the undersigned United States Magistrate Judge for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1(a). The parties have submitted cross-motions for summary judgment [#14 and #17]. For the reasons set forth below, it is the Court's recommendation that the Commissioner's decision be reversed.

## I. INTRODUCTION

This appeal is limited to a very narrow issue. The issue is whether the Administrative Law Judge (ALJ) properly reconciled the testimony of the vocational expert ("VE") with conflicting information in the Dictionary of Occupational Titles ["DOT"], as he was ordered to do by the Remand Order of the Appeals Council. The Plaintiff does not raise any other issue in this appeal, and most importantly, does not challenge the ALJ's findings regarding her Residual Functional

Capacity ("RFC"). *See* Plaintiff's Memorandum at 5-7 [Docket Entry #15]. As the Court concludes the ALJ failed to reconcile the conflict between the DOT and the VE's testimony, the Commissioner has failed to sustain her burden to establish that Plaintiff has the residual functional capacity to perform other work existing in significant numbers in the national economy.

## II.  PROCEDURAL HISTORY

Lois L. Diczek (hereafter referred to as "Diczek") filed concurrent applications for Disability Insurance Benefits (T107-109) and Supplemental Security Income (T315-317) on December 17, 2001. T19, 43, 314. In her applications, Diczek alleged that she became disabled on March 3, 2001. T107, 315. A Notice of Disapproved Claim was issued on March 21, 2002, regarding both applications. T53-57. Diczek filed a Request for Reconsideration on April 22, 2002. T58. Reconsideration denials were issued on July 1, 2002. T59-61, 320-322. Diczek then filed a Request for Hearing by Administrative Law Judge on July 15, 2002. T62.

Pursuant to Diczek's request for hearing, ALJ Roger W. Thomas conducted a hearing on July 9, 2003. T43, 364. Testimony was taken from Diczek, Dr. Joseph Horozaniecki in his role as neutral Medical Expert (ME) and Mitchell Norman in his role as neutral Vocational Expert (VE). T43, 364-395. Following the hearing, ALJ Thomas issued an Unfavorable Decision, dated September 12, 2003. T40-52. Diczek then timely filed a Request for Review of Hearing Decision/Order. T75. The Appeals Council, on May 14, 2004, remanded Diczek's matter to the ALJ for further proceedings. T92-94.

Pursuant to the Appeals Council's remand order, ALJ Thomas conducted a second hearing on November 5, 2004. T19, 345. At this hearing, testimony was taken only from the VE. T345-361. Subsequently, on March 9, 2005, ALJ Thomas issued a second unfavorable decision. T16-30. Diczek then filed a Request for Review on May 4, 2005, with supporting arguments. T15, 340-342.

On June 24, 2005, the Appeals Council denied Diczek's Request for Review, T11-13, making the ALJ's March 9, 2005, decision the final decision of the Commissioner. This appeal followed.

### III. RELEVANT FACTS

A. <u>Vocational factors</u>

Diczek was born on October 4,1965 (T107, 315); she was considered a younger individual at all times relevant to her claim for benefits. T28, 30. She completed the 10th grade. T147.

B.   <u>Medical Records.</u>

The evidence of record documents that Diczek has sought treatment for back pain. T188-195,202-204, 206, 225-242, 288, 290. Records also document diagnoses of panic disorder with agoraphobia (T249, 306, 313), major depressive disorder (T306, 311), posttraumatic stress disorder T306, 311,313) and borderline intellectual functioning (T306).

C.   <u>Relevant hearing testimony.</u>

The hearing on November 5, 2004, was brief and limited to the testimony of the VE. ALJ Thomas posed a hypothetical question to the VE which asked the VE to assume an individual of Diczek's age, education and past relevant work experience similar to Diczek's, and with Diczek's RFC. T350. The VE responded that such an individual could not perform Diczek's past relevant work. T350. The VE next opined that the hypothetical individual could perform other types of work such as a burr grinder, machine feeder, hand packager and laminator. T350-352. The VE testified that the first two jobs are described as "light" by the DOT and the second two jobs as "sedentary." T352. When ALJ Thomas added an additional restriction that there be no high production goals, the VE testified that the four jobs he had just identified that Plaintiff could perform would be eliminated. T353. When the ALJ asked the VE to explain this, the VE stated, "[b]ecause the production type work (sic) you're almost always

expected to have some sort of production goal." T. 353. The ALJ then asked the VE to consider that the ALJ had limited the additional restriction to *high* production goals.  The VE responded:

> High production might be the kind of job where you're on an assembly line, where you have a constant belt going past, you have to meet an hourly or a daily quota in order to keep your job.  It's a speed based job.  Another high production job might be a sales job where you have, again, like a daily or a weekly quota that you have to meet in order to keep your position as opposed to jobs where you work in a sense at your own pace and you're not depending upon the speed set by another person in order to maintain your job.

T354.

When asked to reconsider his opinion that the four jobs he had identified would be eliminated by the additional restriction of production goals, the VE responded, "then that would not change my testimony, then, Your Honor, based on that's how I guess I was determining it as well...All of these jobs would require some sort of production quota at the end of the day." T354.  The VE then testified that there were no other jobs that Plaintiff could perform with this additional restriction.  T.354.

Prior to the hearing, the ALJ sent the VE a number of interrogatories.  T. 182-182A.  In response to interrogatory no. 9 which asked the VE to state whether there were any conflicts between the occupational evidence he provided at the first hearing (with regard to the jobs he identified for Plaintiff) and the descriptions of jobs in the DOT, the VE answered, "None that I am aware of." T182A.  At the hearing, the ALJ followed up on this subject and asked the VE whether his testimony was consistent with the DOT.  The VE stated, "I believe it is your honor." T354.  The ALJ asked the VE to provide more comment and expressly asked him, "Any comments you have, any differences from the DOT or any other thoughts about...how do you know that?  Is it based upon your experience, training, have you seen those jobs?" T354.  The

VE responded:

> Yes.  I have seen (inaudible) job, I have seen laminator job (sic), I have seem some hand packaging jobs.  So, yeah, is (sic) would be a combination of my experience, my understanding as to how the DOT is (inaudible), the way it was formulated and how (sic) came across the numbers that they came across when assigning numbers to the different jobs....And, and 20 years of experience performing this sort of work.

T354.

The ALJ then asked how the VE could reconcile his opinion that the Plaintiff could perform certain jobs (those he identified before the ALJ added the restriction of no high production goals) that according to the DOT required a reasoning of level 2, when as the ALJ stated, Plaintiff would only be able to manage jobs with reasoning of level 1.  The VE responded:

> Well, the DOT itself, you know, identifies the reasoning level as, as a two.  However, in the math level and language level it's at a one.  And I think when you look at simple, unskilled jobs, you really should be looking at more of the SVP to do the job versus the GED requirements to do the job.  An SVP would be the specific vocational preparation, how much time it would take to learn the job, and, of course, again without knowing what [Dr. Kariusoff[1]] might be thinking when he assigns something like that it's hard to say.

T355.

When asked how he calculated the number of jobs available in Minnesota for each of the jobs the VE identified, the VE stated that he followed the same methodology for each job.  T358.  This methodology involved estimating information available from the Department of Economic Security.  T360.  The VE did not prepare a written report of his calculations in determining the number of jobs that existed in Minnesota in each of the job categories he

---

[1]Dr. Karayusuf a consulting psychiatrist. T25 and Exhibit 8F.

identified. T360.  When asked if he could determine how many jobs of burr grinder there are in Minnesota that would fit the Judge's hypothetical, the VE stated: "No, there is no way I can give you that." T361.

## IV. STANDARD OF REVIEW

Judicial review of the final decision of the Commissioner is restricted to a determination of whether the decision is supported by substantial evidence on the record as a whole.  *See* 42 U.S.C. § 405(g); *see also Qualls v. Apfel*, 158 F.3d 425, 427 (8th Cir. 1998); *Gallus v. Callahan*, 117 F.3d 1061, 1063 (8th Cir. 1997); *Wilson v. Sullivan*, 886 F.2d 172, 175 (8th Cir. 1989). Substantial evidence means more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See Jackson v. Apfel*, 162 F.3d 533, 536 (8th Cir. 1998); *Black v. Apfel*, 143 F.3d 383, 385 (8th Cir. 1998).  In determining whether evidence is substantial, a court must also consider whatever is in the record that fairly detracts from its weight.  *See Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999); *see also Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989) (citing Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)).

A court, however, "may not reverse merely because substantial evidence would have supported an opposite decision."  *Roberts v. Apfel*, 222 F.3d 466, 468 (8th Cir. 2000) (internal citations omitted); *see also Gaddis v. Chater*, 76 F.3d 893, 895 (8th Cir. 1996).  Therefore, our review of the ALJ's factual determinations is deferential, and we neither re-weigh the evidence, nor review the factual record de novo.  *See Flynn v. Chater*, 107 F.3d 617, 620 (8th Cir. 1997); *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996).

In determining a claimant's eligibility for benefits, the Commissioner follows a 5-step

sequential evaluation. 20 CFR §§ 404.1520, 416.920. The fifth step involves the question of whether the claimant's impairments prevent her from doing other work (if at step four it is determined that she cannot do her past relevant work); if so, the claimant is disabled. *Morse v. Shalala*, 16 F.3d 865, 871 (8th Cir.1994). "If the ALJ finds that the claimant cannot return to [her] past relevant work, the burden of proof shifts to the [Commissioner], who then has the duty to establish that the claimant is not disabled within the meaning of the Act." *Talbott v. Bowen*, 21 F.2d 511, 514-15 (8th Cir.1987); *see also Lewis v. Heckler*, 808 F.2d 1293, 1297 (8th Cir. 1987); *Tucker v. Heckler*, 776 F.2d 793, 795 (8th Cir.1985).

## V. LEGAL ANALYSIS

Diczek does not dispute the findings of ALJ Thomas regarding the first four steps of the sequential evaluation.  In our circuit, it is well-settled law that once a claimant demonstrates that he or she is unable to do past relevant work, the burden of proof shifts to the Commissioner to prove, first that the claimant retains the residual functional capacity to do other kinds of work; and, second that other work exists in substantial numbers in the national economy that the claimant is able to do. *McCoy v. Schweiker*, 688 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc); *O'Leary v. Schweiker*, 710 F.2d 1334, 1338 (8th Cir. 1983). *Nevland v. Apfel*. 204 F.3d 853, 857 (8th Cir. 2000) (emphasis added).  In the present case, the fact that the burden of proof has shifted to the Commissioner is pivotal.

On May 14, 2004, the Appeals Council vacated the ALJ's first decision, dated September 12, 2003, and remanded the case to the ALJ.  The reason for the Appeals Counsel's remand was that  the jobs that the VE stated were within Plaintiff's RFC (hand packager and laminator) and adopted by the ALJ in his decision denying her benefits, were beyond her capacity. T. 93.  The

Appeals Council gave the ALJ specific instructions for correcting this error:

> Upon remand the Administrative Law Judge will:
>
> Obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14).  The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole.  The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and  information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p)

T94.

 Without any testimony to reconcile the differences (as found by the Appeals Council) between the DOT and the VE's opinion, the ALJ's new decision, dated March 9, 2005, again finds that Plaintiff can perform the jobs of hand packager and laminator.  The ALJ also finds that surveillance system monitor is a job Plaintiff could perform.

The VE did not clarify the effect of Diczak's assessed limitations on her occupational base. The VE only noted that two of the jobs identified by the VE[2]  were described as "light" by the DOT and two of the jobs were considered "sedentary" by the DOT.  Diczak's RFC includes "light work" so the VE's statement does not clarify how he believes Diczak's limitations affect her ability to do the four types of jobs the VE identified.  But the Appeals Council already rejected the finding that Plaintiff could perform these jobs and specifically stated that these job categories exceeded Plaintiff's RFC.  Thus the VE's observation that two of these job categories

---

[2]In addition to the jobs the ALJ found Plaintiff could perform, the VE identified other jobs as to which the ALJ made no finding: burr grinder and machine feeder

are sedentary adds nothing to his previous testimony. This is not surprising given the VE's answer to the written interrogatory asking him to explain any conflicts between his occupational testimony and the DOT (the VE answered that he did not know of any).

The VE did not identify particular jobs within the job categories that he had identified which he believed the Plaintiff could perform. He simply repeated his testimony from the first hearing. The VE's task "is to determine whether jobs exist for someone with claimant's *precise* disabilities." *Montgomery v. Chater*, 69 F.3d 273, 277 (8th Cir. 1995) (quoting *Jelinek v. Brown*, 870 F.2d 457, 459 (8th Cir. 1989 (emphasis in original) *See, e.g., Jones v. Chater*, 72F.3d 81, 82 (1995) (citing *Montgomery v. Chater*, 69 F.3d 273, 276-77 (8th Cir. 1995). DOT classifications may be rebutted, however, with VE testimony which shows that "particular jobs, whether classified as light or sedentary, may be ones that a claimant can perform." *Montgomery v. Chater*, 69 F.3d 273, 276 (8th Cir. 1995) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995)). The VE did not identify the particular light or sedentary jobs that a person with Plaintiff's precise limitations could perform.

Indeed, when asked to address the Plaintiff's capacity to perform the laminator job, which, according to the DOT appears to require a reasoning level higher than the ALJ found Plaintiff to have, the VE's ultimate answer was, "Without knowing what Dr. Karayusuf might be thinking when he assigns something like that, its hard to say." (Tr. 355).

The VE failed to resolve the conflicts between his opinion and the DOT. The VE explained that he disagreed with the DOT's use of the GED scale rather than the specific vocational preparation scale for evaluating a claimant's ability to do certain jobs. This does not resolve the conflict between the VE's testimony and the DOT. Generally, when the expert

-9-

testimony conflicts with the DOT, it is the DOT that controls. *Montgomery v. Chater*, 69 F.3d 273, 276 (8th Cir. 1995) (citing *Smith v. Shalala*, 46 F.3d 45, 47 (8th Cir. 1995).

The Appeals Council has already found a conflict between the DOT and two of the jobs the ALJ found Plaintiff could perform; laminator and hand packager.  In her memo Plaintiff contends the third job, surveillance system monitor, is also beyond her residual functional capacity.  The Commissioner has failed to meet her burden to establish that this job is one Plaintiff could perform.  Indeed, at the hearing following the Appeals Council's remand, the VE doesn't even mention this job.  While the VE did mention three other jobs, bander, burr grinder, and machine feeder, the ALJ made no findings regarding whether these jobs are or are not within Plaintiff's RFC, and the Commissioner is now estopped from relying on them here.  See *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962).

Accordingly, the court concludes that the ALJ failed to comply with the Appeals Council's order and his decision that Plaintiff is not entitled to benefits is not supported by substantial evidence on the record as a whole.

## RECOMMENDATION

Based on the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.  Plaintiff's Motion for Summary Judgment [#14] be **GRANTED**; and

2.  Defendant's Motion for Summary Judgment [#17] be **DENIED**.

DATED: August 21, 2006              *s/ Franklin L. Noel*
                                    FRANKLIN L. NOEL
                                    United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **September 8, 2006**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.